# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3420MN

_____

Janice Collins, on behalf of      *
Tyrone Williams,      *
     *
     Appellant,      *
     * On Appeal from the United
     v.      * States District Court
     * for the District of
     * Minnesota.
Jo Anne B. Barnhart, Commissioner      *
of Social Security,      *
     *
     Appellee.      *

_____

Submitted: March 11, 2003
Filed: July 8, 2003

_____

Before WOLLMAN, RICHARD S. ARNOLD, and MURPHY, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


    Janice Collins applied to the Social Security Administration for benefits on behalf of her allegedly disabled eleven-year-old son, Tyrone Williams. Her application was rejected, and she requested a hearing before an Administrative Law Judge. The ALJ rejected her claim, finding that Tyrone's medication allowed him to

function adequately. Ms. Collins filed the appropriate appeals. Her claim was ultimately denied by the District Court[1] on August 23, 2002. For the reasons given below, we affirm the decision of the District Court.

## I.

Tyrone Williams's mother had him evaluated because she was concerned about his disruptive behavior at school and at home, which had started the year before. A specialist, Richard Auger, diagnosed Tyrone with Attention Deficit Hyperactivity Disorder (ADHD) in July 1998. Tyrone's doctor, Philip Overby, put Tyrone on Ritalin, a common medication for ADHD. In September of that year, Ms. Collins applied, on Tyrone's behalf, for disability benefits.

Ms. Collins filled out four SSA reports from September 1998 through the fall of 1999, which recorded swings in Tyrone's behavior depending on whether he was taking Ritalin or not. For example, in September of 1998, Ms. Collins reported that Tyrone was hard to control when he did not take his medication. He hit other children, he threw things, and he did not pay attention in class. While on medication, however, he did his homework and played well with other children. In November, Ms. Collins reported that her son's behavior had improved considerably. He played team sports, had no physical problems, helped around the house, obeyed safety rules, and did what he was told. Tyrone's third-grade teacher, Dawn Hall, echoed these observations in a report she completed around the same time. Ms. Hall noted that when Tyrone was on his medication he was calm, friendly, and hardworking. When he was not on medication he became loud and belligerent, and did not do as he was told. Ms. Hall also observed that Tyrone was performing at a first-grade level.

---

[1]The Hon. Joan E. Lancaster, United States District Judge for the District of Minnesota, accepting the Report and Recommendation of the Hon. Raymond L. Erickson, United States Magistrate Judge.

Dr. Craig Barron, a licensed psychologist, evaluated Tyrone in December of 1998. Ms. Collins told him that Tyrone did his chores around the house, took care of his own physical needs like bathing and dressing, and enjoyed going to the park. Ms. Collins attributed this improved behavior to the Ritalin. Dr. Barron described Tyrone as being an articulate speaker with logical thoughts. Dr. Barron tested Tyrone and believed that Tyrone's IQ was much closer to average than Dr. Overby had suggested. Dr. Barron thought that a learning disability rather than a low IQ might be the cause of Tyrone's poor academic performance. Dr. Barron confirmed that Tyrone had ADHD, but he described it as "undifferentiated type" ADHD, a diagnosis not in the Diagnostic Statistical Manual of Mental Disorders (DSM-IV).

Physicians from two state agencies reaffirmed Dr. Overby's diagnosis of ADHD in January and April of 1999. They stated that Tyrone's condition had been rendered non-severe by medication. Also in April of 1999, both Ms. Hall and Bill Deno, an instructional integration specialist, filed reports on Tyrone suggesting that while his behavior remained decent, it appeared that the Ritalin's effect was lessening. Ms. Collins again filed a report, her third, which also suggested that Tyrone's behavior was degenerating. Dr. Overby responded by increasing Tyrone's medication. That fall, Ms. Collins filled out her final evaluation, in which she basically restated what she had said in November of 1998: Tyrone could not concentrate and had conflicts with others when off his medication, but when on his new dosage of medicine, he got along well with others and did what he was told. Tyrone's new fourth-grade teacher, Richard Willegalle, described Tyrone as being hyperactive at times but as having an average ability to interact with others and go from one task to another.

An administrative hearing was held in November of 1999. Both sides presented testimony regarding Tyrone's functioning. Of special relevance to this appeal is the testimony of Dr. Jones Adkins, a psychologist, who testified as a neutral medical expert about how Tyrone's ability to manage in five different functional areas

was affected by ADHD. Dr. Adkins testified that, with medication, Tyrone showed less than marked limitation in the areas of cognitive/communicative functioning, social functioning, and personal functioning. The doctor thought Tyrone had greater trouble in the area of concentration, persistence, and pace, but still thought that Tyrone's limitation was less than marked. Dr. Adkins testified that Tyrone had no limitations in his motor functioning. The doctor further testified that even without medication, Tyrone's functioning in these areas was still less than markedly limited. Relying heavily on this testimony, the ALJ concluded that Tyrone was not disabled. Ms. Collins appealed the adequacy of the evidence to support these findings. A Magistrate Judge issued a Report and Recommendation suggesting the affirmance of the ALJ's decision, and the District Court adopted that Magistrate's report in full. This appeal followed.

## II.

There are many ways to demonstrate that a child is disabled. 20 C.F.R. § 416.926a(b) (1999). Only one of them is at issue in this appeal. If the ALJ had found that Tyrone had an extreme impairment in one functional area or marked impairments in two functional areas, then he would have been entitled to benefits. 20 C.F.R. § 416.926a(b)(2) (1999). The five relevant functional areas are: (1) cognitive/communicative functioning; (2) social functioning; (3) concentration, persistence, and pace; (4) personal functioning; and (5) motor functioning. Ms. Collins does not challenge the ALJ's conclusions about (4) personal functioning, or (5) motor functioning, so we need not address them.

She does challenge whether there was sufficient evidence to support the ALJ's conclusions that Tyrone did not suffer marked limitations in the three disputed areas. A marked limitation is a serious limitation that interferes with a person's ability to function in an area. 20 C.F.R. § 416.926a(c)(3)(i)(C) (1999). Our scope of review is narrow; we must affirm the Commissioner's decision so long as it conforms to the

law and is supported by substantial evidence on the record as a whole.  Qualls v. Apfel, 158 F.3d 425, 427 (8th Cir. 1998).  Substantial evidence is less than a preponderance, but enough that a reasonable mind might find adequate to support the ALJ's conclusion.  Johnson v. Apfel, 240 F.3d 1144, 1147 (8th Cir. 2001).

After examining each disputed area in turn, we conclude that the ALJ's determinations were supported by substantial evidence in the record.  We reach this result primarily because impairments that are controllable by medication do not support a finding of total disability.  See Johnson, 240 F.3d at 1148.  As will be illustrated below, there is evidence, much of it from Ms. Collins herself, that suggests that when Tyrone took his medication, his functioning, in all contested categories, was adequate.

Cognitive/communicative functioning refers to a person's ability to think, solve problems, recall information, and interact with the world.  20 C.F.R. § 416.926a(c)(5)(iv)(A) (1999).  Whatever his condition before starting Ritalin, after taking the medication, it is clear that Tyrone was able to hold conversations with others, tell jokes, explain his actions, and interact with his teachers.  By December of 1998, he was scoring in the average range on the Weschler Intelligence Scale for Children.  He was promoted to the fourth grade.  He was able to communicate with his teachers and with experts interviewing him.  There is some evidence to the contrary. However, there is substantial evidence here to support the ALJ's conclusion that Tyrone's cognitive/communicative functioning was not markedly impaired.

With regard to social development, 20 C.F.R. § 416.926a(c)(5)(iv)(C) (1999), it is evident that Tyrone's functioning depended on whether he was on his medication or not.  When taking Ritalin, he enjoyed normal relationships with his classmates, siblings, and adults.  His fourth-grade teacher described his ability to interact with others as average.  Ms. Collins argues that the ALJ did not take into consideration that Tyrone is not continually medicated.  Even looking at his worst behavior, it is

arguable whether his social development was markedly impaired. Tyrone has never had any trouble with the police. Despite discipline problems, he has not been removed from normal classes or expelled. He has never threatened extreme violence. In short, his behavior has been disruptive — not incapacitating. There is significant evidence in the record that supports the ALJ's determination that Tyrone did not suffer limitations that markedly impaired his ability to function socially.

The final area of contention regards Tyrone's concentration, persistence, and pace. 20 C.F.R. § 416.926a(c)(5)(iv)(E) (1999). The same facts mentioned above are equally relevant here. According to his teacher, Tyrone was hardworking, could follow multi-step instructions, and had a fair ability to concentrate and remain on task, when on medication. Off his medication, he was disruptive in class, disorganized, and able to follow only basic instructions. Again, there is adequate evidence in the record to support the ALJ's conclusion that, because of his medication, Tyrone's concentration, persistence, and pace, while impaired, were not markedly impaired.

As a final point, Ms. Collins argues that the ALJ's decision was fatally flawed because it relied on the testimony of Dr. Adkins, who, in her mind, did not understand Tyrone's condition because he diagnosed Tyrone with "undifferentiated-type ADHD," a diagnosis of ADHD not in the DSM-IV. She alleges that his testimony, therefore, is inherently unreliable and inadequate to support the ALJ's decision.

We disagree for two reasons. First, Dr. Adkins never claimed that Tyrone had undifferentiated-type ADHD; that was Dr. Barron's diagnosis. Dr. Adkins merely referred to this diagnosis and admitted that he was not sure what was meant by undifferentiated-type ADHD. Second, the diagnosis has minor significance one way or the other. Grebenick v. Chater, 121 F.3d 1193, 1199 (8th Cir. 1997) ("A treating physician's opinion is generally entitled to substantial weight; however, such an opinion is not conclusive in determining disability status."). The regulations say,

"[w]e will not consider your impairment to be [disabling] solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the Listing for that impairment," 20 C.F.R. § 416.925(d). Thus, the dispositive question remains whether Tyrone's functioning in various areas is markedly impaired, not what one doctor or another labels his disorder.

There was adequate evidence in the record to support the ALJ's decision that Tyrone's functioning in all of the areas laid out in the regulations was not markedly impaired because of his ADHD. For that reason, the decision of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.