## LYNNVILLE TRANSPORT, INC., Plaintiff,

v.

Elaine L. **CHAO,** United States Secretary of Labor; and Tammy D. McCutchen, Administrator, Wage and Hours Division, United States Department of Labor, Defendants.

No. 4:02–CV–40646.

United States District Court,
S.D. Iowa,
Central Division.

April 15, 2004.

Michael J. Carroll, Babich, Goldman, Cashatt & Renzo PC, Des Moines, IA, for Plaintiff.

Gary L. Hayward, Asst U.S. Atty., Des Moines, IA, for Defendants.

## ORDER

GRITZNER, District Judge.

Plaintiff brought this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, et seq., for judicial review of agency action. The Court reviews the final decision of the United States Department of Labor pursuant to APA provisions. Attorney for Plaintiff is Michael J. Carroll; attorney for Defendant is Gary L. Hayward. The parties did not request oral argument, and the Court finds oral argument is not necessary on this matter; therefore, the Court considers the matter fully submitted and ready for ruling.

## PROCEDURAL HISTORY

Plaintiff, Lynnville Transport, Inc. ("Lynnville" or "the Company"), was assessed civil penalties by the U.S. Department of Labor ("DOL", "the Government", or "the Agency") for violations of certain child labor statutes and regulations occurring between January 1996 and January 1998. These penalties included assessment of administrative fines. Lynnville requested that an administrative law judge review its objections to the civil money penalty assessment.

A hearing was held before Administrative Law Judge Donald W. Mosser ("ALJ") on September 10, 1999. On August 29, 2000, the ALJ issued a decision affirming the penalties assessed against Lynnville. Lynnville appealed the matter to the Administrative Review Board of the DOL ("ARB"), which affirmed the ALJ's decision and issued a Final Decision and Order dated November 27, 2002. Lynnville commenced the present action seeking review by this Court, on December 24, 2002. The Court established a briefing schedule on July 1, 2003, which has now been completed.

## BACKGROUND

### A. Facts

Lynnville, a closely held corporation located in Sully, Iowa, is a livestock hauling firm. It is owned and operated by Martin Vander Molen and his wife. In addition, two of their adult sons, Jeffrey and Michael Vander Molen, work on the premises. The company transports livestock throughout the United States. The livestock being hauled is largely owned by other individuals and companies. Lynnville's income from its hauling division was approximately $1,800,000 in 1996, and over $2,000,000 the subsequent two years (1997 and 1998). Its workforce consisted of 60 full- and part-time employees in 1996, and 68 employees in 1997.

The work that is the subject of this case involved the cleaning of the trailers used for hauling livestock. Between January 1996 and January 1998, this work was being performed in part by minor-aged children. The minor employees set their own work schedule and never worked at a time that interfered with their school or extracurricular activities. The parents of the children were aware of their children's schedules and the nature of the work they performed.

The minors occasionally used a New Holland LX 865 Skid Loader ("skid loader") to push manure into a pit and to pull a wagon to transport slats between the trucks and the washing shed. When used for this purpose, it was not necessary to, and the minors did not, raise the shovel of the skid loader from its lowest level.

In January 1998, Ronald Mease, an investigator for the Wage and Hour Division, conducted an investigation of Lynnville. During this investigation, the investigator found that Lynnville employed nine minors under the age of 18 to clean trailers. Of the nine minors, seven were under the age of 16, and three were 13 years old when they began working at Lynnville. At least five of the minors used the skid loader as part of their job duties, including two under age 14, and one additional child under age 16.

The investigator found that the seven employees under the age of 16 were illegally employed in an occupation involved in interstate transport. 29 C.F.R. § 570.33(f)(1).[1] Upon reviewing Lynnville's records, the investigator further discovered the following illegal work hours: a minor under the age of 16 worked in excess of 40 hours in a week six times, including twice when he was a 13-year-old; a 13-year-old worked before 7:00 a.m. or after 7:00 p.m. on ten occasions, and worked in excess of eight hours daily while school was not in session, and in excess of 18 hours per week at least twice when school was in session; a 13-year-old worked in excess of eight hours a day twice while school was not in session, after 7:00 p.m. while school was in session on 20 occasions, and in excess of 18 hours per week twice during the school year; a 13-year-old worked after 7:00 p.m. on at least eight occasions while school was in session; a 14-year-old worked in excess of three hours per day and after 7:00 p.m. while school was in session on two occasions; and a 15-year-old worked in excess of 40 hours per week at least seven times when school was not in session, and more than 18 hours per week three times during the school year.

At the conclusion of his investigation, DOL Investigator Mease met with Company officials and discussed the violations he

---

1. Lynnville and Martin Vander Molen, individually, contend they thought they were an agricultural-related business and therefore different rules regarding the employment of minors applied to the Company.

found. It was during this meeting that Plaintiff contends the investigator represented to them that if the Company would bring itself into compliance, no fines would be assessed, a claim contested by the investigator.[2] The investigation ultimately resulted in the DOL finding several violations of the child labor laws, including the unlawful use of a skid loader by minor employees and other safety violations, failure to properly record some of the minors' birth dates, employment hours violations, and overtime pay violations. The investigator, using Form WH–266, determined an amount to be assessed as a civil penalty for the child labor violations and forwarded his findings to the Deputy Director of the Wage and Hour Division.

Donald Chleborad, the District Director of the U.S. DOL, Wage and Hour Division, reviewed the investigator's findings and sent the Company a Notice of Administrative Decision, dated April 7, 1998. This notice informed Lynnville that the investigation revealed the Company had employed nine minors in a manner violative of several child labor provisions of the Fair Labor Standards Act ("FLSA" or "the Act"), and further informed the Company that $21,125.00 in civil penalties was being assessed for the violations.[3] The notice also indicated the administrative appeal procedures applicable in such cases.

## B. The Administrative Proceedings

Following receipt of the April 7, 1998, notice letter, Plaintiff fully availed itself of the administrative appeal procedures. On April 9, 1998, Lynnville, through its president, Martin Vander Molen, sent a letter to District Director Chleborad taking exception to the imposition of penalties. This initiated formal adverse proceedings before the Agency.

After engaging in discovery, the parties participated in an evidentiary hearing in front of the assigned ALJ. Both parties presented testimony and evidence as part of the proceedings. In the hearing before the ALJ, Lynnville made the following arguments: (1) While the minor employees did operate the skid loader in the course of their employment, they did so infrequently, and the skid loader was not operated as a high-lift or hoist apparatus; (2) The minor employees set their own work schedule, they worked a times that did not interfere with school or extracurricular activities, and they worked with their parents' knowledge and consent; (3) There was no evidence the violations were intentional; (4) Lynnville was told and understood that no penalties would be imposed if the Company brought itself into compliance; (5) The statute does not *require* the imposition of penalties in such cases, but it was the Agency policy to do so, and penalties were inappropriate in this case because the violations were *de minimus* in nature and there was no evidence of willfulness in the violations; and (6) The assessment of penalties violates the purpose of the regulation, thereby depriving the Company of due process of law.

---

**2.** Mease contends that during this meeting, the parties discussed the violation of two discrete provisions of the applicable child labor laws, the Company's failure to pay statutory minimum wage and overtime and the child labor violations. He stated that he did not represent to Lynnville's management that if the Company came into compliance on the child labor violations, there would be no civil money penalties on those violations. He did, however, indicate that there would be no penalties for the minimum wage and overtime violations if the Company paid the minors the amounts owed and there were no further violations.

**3.** At the administrative hearing, this amount was reduced by $4,000.00, to a total of $17,125.00, as the DOL dropped the civil penalties associated with the minor employees' use of ladders.

On August 29, 2000, the ALJ issued a Decision and Order generally affirming the Agency's interpretation of applicable regulations and the Agency's final penalty assessment of $17,125.00. The ALJ noted the facts concerning the child labor violations were essentially undisputed. The ALJ also recognized that while there was no evidence any of the minor employees used the skid loader in a hazardous manner, they were permitted to use the skid loader despite the potential hazard it presented, and this was sufficient to establish a violation under the regulations. The ALJ rejected the Company's contentions pertaining to the amount of the penalty imposed and concluded the penalty was reasonable when considering the totality of the circumstances. The ALJ also rejected Lynnville's claim that it had been told no penalty would be imposed, crediting the investigator's testimony on this point.

Lynnville sought review of the ALJ's decision from the ARB. The Company contended that the ALJ erroneously found a violation involving the use of the skid loader despite the fact it was never used for high-lifting or hoisting, that the ALJ improperly credited the investigator's testimony that Lynnville was not told there would be no penalties for the child labor violations, and that the imposition of the penalties was unlawful and unconstitutional because mitigating factors were not taken into consideration. The ARB issued a Final Decision and Order on November 27, 2002, affirming the ALJ's order. This decision and order constitutes the final agency action before the Court for judicial review in this case.

## ANALYSIS

This Court reviews the decision of the DOL to impose sanctions against Lynnville for the acknowledged violations of federal child labor laws. This review comes under the auspices of the APA.

### A. Standard of Review

An agency decision may be set aside by a reviewing court if the court determined the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2) (2003); *see also Wilkins v. Sec'y of Interior,* 995 F.2d 850, 852–53 (8th Cir. 1993). In determining whether the agency decision is arbitrary and capricious, "the reviewing court must determine whether the decision was based on the relevant factors and whether there has been a clear error in judgment." *Sierra Club v. Davies,* 955 F.2d 1188, 1192 (8th Cir.1992).

The court's review is generally based upon the record created before the defendant agency. *See Newton County Wildlife Ass'n v. Rogers,* 141 F.3d 803, 807 (8th Cir.1998) ("APA review of agency action is normally confined to the agency's administrative record.") (citing *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)); *Wilkins,* 995 F.2d at 853 ("[W]hen reviewing agency decisions, both a district court and an appellate court must make an independent decision based on the identical record that was before the fact finder.") (citing *Davies,* 955 F.2d at 1192). While the reviewing court's determination should be based on an exhaustive inquiry of the facts, the standard of review is narrow. *Davies,* 955 F.2d at 1192. The Court is not permitted to substitute its judgment for that of the agency. *Id.* at 1192–93.

The actual standard the Court applies in reviewing agency action depends on the issue under consideration. Lynnville has raised the following issues for the Court's consideration: (1) the Agency's factual determinations; (2) the Agency's conclusions of law; and (3) the Agency's assessment of penalties against Lynnville.

### 1. Factual Determinations by Agency

An agency's factual determinations are to be reviewed under a substantial evidence standard of review. *See* 5 U.S.C. § 706(2)(E).[4] Substantial evidence is less than a preponderance, *Collins ex rel. Williams v. Barnhart,* 335 F.3d 726, 729 (8th Cir.2003), but more than a mere scintilla, *Shipley v. Arkansas Blue Cross & Blue Shield,* 333 F.3d 898, 901 (8th Cir. 2003) (quoting *Fletcher–Merrit v. NorAm Energy Corp.,* 250 F.3d 1174, 1179 (8th Cir.2001)), such that a reasonable mind might find the evidence on record adequate to support the agency's determination. *Collins,* 335 F.3d at 729.

A court may find the evidence substantial even when it could support a result different than that reached by the agency. *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir.2003). In addition, the ALJ "is in the best position to gauge the credibility of testimony," and as a result, the ALJ "is granted deference in that regard." *Estes v. Barnhart,* 275 F.3d 722, 724 (8th Cir. 2002) (citing *Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir.2001)).

### 2. Conclusions of Law—Statute or Regulation Construction by Agency

A court generally does not defer to an agency's interpretation or construction of law. There is an exception, however, when a court is construing an agency's construction of a statute which is subject to that agency's enforcement or the agency's own regulations.

■ Under the *Chevron* doctrine, the level of deference turns on the nature of the congressional delegation of regulatory authority to the agency. *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron,* the Supreme Court provides that

> [i]f Congress has explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

*Id.* (internal citations omitted); *see also Coalition for Fair & Equitable Regulation of Docks on Lake of the Ozarks v. Fed. Energy Regulatory Comm'n,* 297 F.3d 771, 777–78 (8th Cir.2002); *TeamBank, N.A. v. McClure,* 279 F.3d 614, 618–19 (8th Cir. 2002). The Supreme Court has further stated the following with regard to the deference due to an agency's construction of its own regulations:

> We must give substantial deference to an agency's interpretation of its own regulations. *Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 150–51, 111 S.Ct. 1171, 1175–

---

4. The Court is permitted to "set aside" agency determinations pursuant to 5 U.S.C. § 706(2) under certain specified circumstances. Section 706(2)(E) provides for one such circumstance when the action is "unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute ...." 5 U.S.C. § 706(2)(E). The Agency's proceedings that make up the subject of this action were subject to the procedures set forth in 5 U.S.C. §§ 556 and 557. *See* 29 U.S.C. § 216(e) (last unnumbered paragraph) (providing "final determination of the penalty shall be made in an administrative proceeding after opportunity for hearing in accordance with section 554 of Title V ..."); 5 U.S.C. §§ 556, 557 (procedures for hearings under 5 U.S.C. § 554).

76, 113 L.Ed.2d 117 (1991); *Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given " 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " *Ibid.* (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).

*Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); *see also United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 220, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001); *St. Luke's Methodist Hosp. v. Thompson,* 315 F.3d 984, 987 (8th Cir. 2003). Thus, a court will not give substantial deference to an agency interpretation that is plainly inconsistent with the rule. *Thomas Jefferson Univ.,* 512 U.S. at 512, 114 S.Ct. 2381; *Hollinrake v. Iowa Law Enforcement Acad.,* 452 N.W.2d 598, 601 (Iowa 1990).

### 3. Assessment of Penalties by Agency

■ An agency determination as to what level of sanction to impose on a violator is subject to a deferential abuse of discretion standard of review. *Wilson v. Commodity Futures Trading Comm'n,* 322 F.3d 555, 560 (8th Cir.2003); *ABL Produce, Inc. v. United States Dep't of Agric.,* 25 F.3d 641, 645 (8th Cir.1994). "An agency is entitled to substantial deference in assessing the sanctions appropriate for a violation of the statute and regulations it administers, unless its choice of sanctions is 'unwarranted in law' or without justification in fact." *Wilson,* 322 F.3d at 560–61 (citations omitted); *Valdak v. Occupational Safety & Health Review Comm'n,* 73 F.3d 1466, 1470 (8th Cir.1996); *see e.g., Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 185–86, 188–89, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973) (reversing Eighth Circuit ruling that agency erred in imposing a larger penalty than previously imposed in similar circumstances by concluding that appellate court applied the wrong standard of review and improperly substituted its opinion for that of the agency); *see also Thirsty's, Inc. v. United States Dep't of Labor,* 57 F.Supp.2d 431 (S.D.Tex.1999) (finding the method of assessing penalties employed by the Wage and Hour Division of the DOL comports with all of the regulatory criteria established for determining necessity of penalties and the amount of penalties assessed, and are subject to further agency review). In short, it is up to the agency to fashion "an appropriate and reasonable remedy," and a court "may decide only whether under the pertinent statute and relevant facts, the [agency] made 'an allowable judgment in [its] choice of the remedy.' " *Butz,* 411 U.S. at 188–89, 93 S.Ct. 1455 (quoting *Jacob Siegel Co. v. FTC,* 327 U.S. 608, 612, 66 S.Ct. 758, 90 L.Ed. 888 (1946)).

### B. Discussion

Lynnville alleges the Agency's interpretation of a regulation regarding the skid loader was plainly erroneous and that the Agency's assessment of penalties was an abuse of discretion. Lynnville contends the Agency's interpretation and application of the hazardous occupations regulation is contrary to the plain language, and therefore no deference need be afforded the Agency's interpretation. Lynnville further contends that the penalty assessment by the Agency was an abuse of discretion because the Agency (1) failed to consider all of the relevant factors, (2) violated Lynnville's due process, and (3) was equitably estopped from imposing a financial penalty in this matter.

### 1. Interpretation of Regulation

■ The issue here is whether the Agency correctly construed the applicable law, i.e., the applicable statutes and regulations.[5] As previously stated, under the *Chevron* doctrine, the Agency's construction is to be given controlling weight unless it is arbitrary and capricious or manifestly contrary to the language of the statute. *Chevron*, 467 U.S. at 843–44, 104 S.Ct. 2778. Similarly, the Agency's construction of its own regulations is to be given controlling weight unless it is plainly erroneous or inconsistent with the plain language of the regulation. *Thomas Jefferson Univ.*, 512 U.S. at 512, 114 S.Ct. 2381; *see also St. Luke's Methodist Hosp.*, 315 F.3d at 987 (stating that "if a regulation is plain on its face, [the court] will give no deference to an agency's attempt to interpret it."). Indeed, "the final power of interpretation is in the courts." *Sicard v. Sioux City*, 950 F.Supp. 1420, 1435 (N.D.Iowa 1996).

Lynnville contends that the Agency interpretation is clearly erroneous and inconsistent with the plain language of the regulation. The first step in resolving a dispute over the meaning of a statute begins " 'with the language of the statute itself.' " *Id.* at 1436 n. 7 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). This step has been called the "cardinal canon above all others." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *see also Sicard*, 950 F.Supp. at 1436 n. 7. Thus, the Court first examines the language of the statute and the relevant regulations and compares them to the Agency's construction to determine consistency.

The FLSA is a remedial statute, enacted in the public interest. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945). The courts have found there is a particularly compelling public interest in protecting the health and well-being of working children. *See Lenroot v. Interstate Bakeries Corp.*, 146 F.2d 325, 327 (8th Cir.1945); *Thirsty's, Inc.*, 57 F.Supp.2d at 434 ("The child labor provisions of the FLSA were enacted to ensure that the children's employment will not physically harm them or interfere with their schooling.").

The FLSA prohibits the employment of oppressive child labor in commerce, in the production of goods for commerce, or in any operation that qualifies as an "enterprise" under the Act. 29 U.S.C. § 212(c). "Oppressive child labor" is defined in the Act as

> a condition of employment under which (1) any employee under the age of sixteen years is employed by an employer ... in any occupation, or (2) any employee between the ages of sixteen and eighteen years is employed by an employer in any occupation which the Secretary of Labor shall find and by order declare to be particularly hazardous for the employment of children between such ages or detrimental to their health or well being .... The Secretary of Labor shall provide by regulation or by order that the employment of employees between the ages of fourteen and sixteen years in occupations other than manufacturing and mining shall not be deemed to constitute oppressive child labor if and to the extent that the Secretary of Labor determines that such employment is confined to periods which

---

**5.** The FLSA delegates authority to the Agency to set enforceable standards, making the previously delineated principles applicable to the analysis of this issue. *See* 29 U.S.C.

§§ 212(c), 203(1); *Thomas Jefferson Univ.*, 512 U.S. at 512, 114 S.Ct. 2381; *Chevron*, 467 U.S. at 843–44, 104 S.Ct. 2778.

will not interfere with their schooling and to conditions which will not interfere with their health and well-being.

29 U.S.C. § 203(1).[6]

In accordance with this statutory provision, the Secretary of Labor has promulgated Hazardous Occupations ("HO") orders which prohibit or strictly regulate certain activities by minors. *See* 29 C.F.R. 570, subpart E ("Occupations Particularly Hazardous for the Employment of Minors Between 16 and 18 Years of Age or Detrimental to Their Health or Well–Being").[7] The regulation at issue here is HO Order No. 7. *See* 29 C.F.R. § 570.58.

Use of the skid loader by the minor employees was found to violate HO Order No. 7 for "occupations involved in the operation of power-driven hoisting apparatus." 29 C.F.R. § 570.58(a). In the regulation, the "[w]ork of operating [a] ... hoist, or high-lift truck" is listed as one of the occupations particularly hazardous and violative of the FLSA. 29 C.F.R. § 570.58(a)(1). The regulation further provides the following, in relevant part:

> (4) The term hoist shall mean a power-driven apparatus for raising or lowering a load by the application of a pulling force that does not include a car or platform running in guides. The term shall include all types of hoists, such as base mounted electric, clevis suspension, hook suspension, monorail, overhead electric, simple drum and trolley suspension hoists.
>
> (5) The term high-lift truck shall mean a power-driven industrial type of truck used for lateral transportation that is equipped with a power-operated lifting device usually in the form of a fork or platform capable of tiering loaded pallets or skids one above the other. Instead of a fork or platform, the lifting device may consist of a ram, scoop, shovel, crane, revolving fork, or other attachments for handling specific loads. The term shall mean and include high lift trucks known under such names as fork lifts, fork trucks, fork-lift trucks, tiering trucks, or stacking trucks, but shall not mean low-lift trucks or low-lift platform trucks that are designed for the transportation of but not the tiering of material.

29 C.F.R. § 570.58(b)(4)-(5).

Lynnville argues the issue is whether the simple use of a device that has the capacity to hoist or high lift is enough to meet the requirements of the regulations. The evidence in the record indicates that while some minors occasionally used the skid loader, the hoist or high-lift features were never used. Indeed, the Government accepts this contention.

The Company repeatedly draws attention to the final line of the statement defining "high-lift trucks" that the term "shall not mean low-lift trucks or low-lift platform trucks that are designed for the transportation of but not the tiering of material." *See* 29 C.F.R. § 570.58(b)(5). Lynnville propounds that "[i]t is apparent by definition, the regulation envisions that low-lift trucks designed for transporting, but not tiering material, are exempt from coverage under the regulation." Based on this rendering, the Company contends the regulation "does not appear to envision a

---

**6.** Regulations governing the weekly hours and times of day which minor employees between the ages of 14 and 16 are permitted to work, as well as their occupation restrictions, are set forth in Child Labor Regulation 3. *See* 29 C.F.R. § 570.33–35. Lynnville has conceded its violations of Child Labor Regulation 3,

though the Company does dispute the amount of civil monetary penalties assessed for those violations.

**7.** The HO orders have been made specifically applicable to minors under the age of 16. 29 C.F.R. § 570.33(e).

violation" when the vehicle is employed in the manner used in this case. Lynnville submits that because the skid loader was used in a manner synonymous with the capability of a low-lift truck, the use did not violate the purpose of plain language of the regulation. In other words, according to Lynnville, "[t]he common sense application of the language indicates the narrow purposes for which employees of Lynnville operated the skid loader was not a violation of the regulation."

Lynnville also posits the collateral argument that one of the purposes of the regulation is safety, and that safety was a consideration in its decision to use the skid loader. According to the Company owner, Lynnville could have had the minor employees use a different device that would not have been violative of the regulation but would have been more dangerous. Instead, the Company contends safety considerations compelled use of the skid loader, as the record as a whole indicates the safeness of the skid loader. Even assuming the skid loader was the safer of the available options, that does not address the issue of whether a violation occurred in the use of the skid loader.

The ALJ found "it is the mere *use* of the skid loader by minors that is precluded by Section 570.58(a)(1) . . . even if the minors' use of the equipment was consistent with that normally performed by low-lift trucks" (emphasis added). (Tr. 639.) In so finding, the ALJ rejected Lynnville's argument as too liberal of an interpretation, reasoning that "[a]lthough the minors testified that they did not lift the shovel of the skid loader to high levels in performing their duties, the fact that they had the opportunity to do so, either intentionally or unintentionally, by moving the levers, placed the minors and other minors in the area in a potentially hazardous position." (Tr. 639.) According to the ALJ, to find otherwise "would allow the employers and/or the minors to make the decision as to how the hazardous equipment should be operated to preclude a hazardous condition," (Tr. 639), a result certainly not allowed under the statute or regulations.

The ARB found this determination "well-reasoned", and accepted the ALJ's finding that "the operation of a high-lift truck by a minor is a *per se* violation of the regulations and that 'the operation of such a truck by minors is precluded by the hazardous order even if the minors' use of the equipment was consistent with that normally performed by low-lift trucks.' " (Tr. 798.) Without further comment on this issue, the ARB affirmed the ALJ's Decision and Order.

The Government maintains the Agency's interpretation of the applicable regulations is not contrary to the plain language of the regulation or statute. Consequently, the Agency urges the Court to accord the Agency's construction controlling weight and affirm the Agency decision.

■ Under section 570.58, "operating" a high-lift truck is prohibited. *See* 29 C.F.R. 570.58(a). A "high-lift truck" is defined by the regulation as a certain type of vehicle "equipped with a power-operated lifting device." *See* 29 C.F.R. § 570.58(b)(5). Moreover, the definition merely states a high-lift truck is one that is "*capable* of tiering loaded pallets or skids one above the other." *Id.* (emphasis added). There is nothing within the definition related to actual application or operation of that capability. The regulation addresses a potential for harm. It is inescapable that the express definition strictly interpreted according to the plain language prohibits the employment of minor employees in tasks involving the operation of a truck with the listed capabilities, regardless of whether those capabilities are in fact utilized. The Court must conclude the Agency was correct in its determination that it is the *use*

of the skid loader that violates the regulation, and not the actual use of the apparatus that brings the skid loader under the definition of hoist or high-lift truck.

The Court finds the Agency's construction of the HO regulation concerning the skid loader did not contradict the statute or the plain language of the regulation. As a result, the Court affords the Agency's construction controlling weight. Therefore, the Court affirms the Agency's interpretation of 29 C.F.R. § 570.58 as applied to Lynnville in the present action.

### 2. Assessment of Penalties

The FLSA authorizes the assessment of civil money penalties for child labor violations. *See* 29 U.S.C. § 216(e). The applicable section provides the following:

> Any person who violates the provisions of section 212 of this title or section 213(c)(5) of this title, relating to child labor, or any regulation issued under section 212 or 213(c)(5) of this title, shall be subject to a civil penalty of not to exceed $10,000 for each employee who was the subject of such a violation .... In determining the amount of any penalty ... the appropriateness of such penalty to the size of the business of the person charged and the gravity of the violation shall be considered.

29 U.S.C. § 216(e). The Secretary of Labor has promulgated regulations providing guidance for the assessment of penalties within this statutory framework. *See* 29 C.F.R. § 579.5.

As previously outlined, "[a]n agency is entitled to substantial deference in assessing the sanctions appropriate for a violation of the statute and regulations it administers ...." *Wilson*, 322 F.3d at 560–61. That determination will not be overturned by a reviewing court "unless its choice of sanctions is 'unwarranted in law' or without justification in fact." *Id.; see*

*also Butz*, 411 U.S. at 185–86, 93 S.Ct. 1455.

### a. Consideration of Relevant Factors

In determining whether an agency decision is arbitrary and capricious, a court must consider whether the agency decision was based on all relevant factors. *See Davies*, 955 F.2d at 1192. The applicable regulations in this case provide factors to consider when determining the appropriateness of penalties assessed by the DOL. Lynnville contends the Agency failed to properly consider the relevant factors in determining the penalty to assess the Company for the violations discovered.

As set forth in the applicable regulation, the following factors are to be considered by the Agency in determining the appropriate penalty to assess for child labor violations: the size of the business charged with the violation; the gravity of the violations; and, if appropriate, the nature of the violation coupled with any assurance of future compliance and achieving the objectives of the Act.

With regard to the size of the business factor, the regulation provides in pertinent part:

> (b) In determining the amount of such penalty there shall be considered the appropriateness of such penalty to the size of the business of the person charged with the violation or violations, taking into account the number of employees employed by that person (and if the employment is in agriculture, the man-days of hired farm labor used in pertinent calendar quarters), dollar volume of sales or business done, amount of capital investment and financial resources, and such other information as may be available relative to the size of the business of such person.

29 C.F.R. § 579(5)(b). Regarding the gravity of the violation(s), the pertinent portion of the regulation provides:

> (c) In determining the amount of such penalty there shall be considered the appropriateness of such penalty to the gravity of the violation or violations, taking into account, among other things, any history of prior violations; any evidence of willfulness or failure to take reasonable precautions to avoid violations; the number of minors illegally employed; the age of the minors so employed and records of the required proof of age; the occupations in which the minors were so employed; exposure of such minors to hazards and any resultant injury to such minors; the duration of such illegal employment; and, as appropriate, the hours of the day in which it occurred and whether such employment was during or outside school hours.

29 C.F.R. § 579(5)(c). Additionally, when appropriate, the regulation provides that the following factors are to be taken into consideration:

> (d) Based on all the evidence available, including the investigation history of the person so charged and the degree of willfulness involved in the violation, it shall further be determined, where appropriate,
>
> (1) Whether the evidence shows that the violation is "de minimis" and that the person so charged has given credible assurance of future compliance, and whether a civil penalty in the circumstances is necessary to achieve the objectives of the Act; or
>
> (2) Whether the evidence shows that the person so charged had no previous history of child labor violations, that the violations themselves involved no intentional or heedless exposure of any minor to any obvious hazard or detriment to health or well-being and were inadver-tent, and that the person so charged has given credible assurance of future compliance, and whether a civil penalty in the circumstances is necessary to achieve the objectives of the Act.

29 C.F.R. § 579(5)(d).

Referring to the penalty assessment for the HO violations for use of the skid loader, Lynnville contends the Agency "failed to consider *any* of the above factors" because Agency policy is to assess the same fine whether or not the employees use the hoist apparatus. Specifically, Lynnville contends the Agency should have considered that (1) the employees were well-trained in the use of the skid loader, (2) the safety of the skid loader, (3) the minors were well-supervised, and (4) the skid loader was not used as a high-lift truck. The Company proffers that if properly considered, these factors show the HO violation lacked gravity and was at most de minimus.

Referring to the fines assessed for the other child labor violations, Lynnville contends the Agency failed to consider other relevant factors, including that the minor employees set their own hours, that the minors' parents were aware of and consented to their children's schedules, that Lynnville was acting under the assumption it was in an agriculture-related business, that the violations were not willful, that the Company brought itself into immediate compliance upon learning of the violations, and that the investigator and the Company had a deal that no penalties would be assessed if the Company brought itself into compliance. These factors go to intent, gravity, evidence of willfulness, and compliance upon notice, and according to Lynnville, "[t]hese mitigating factors are relevant to the determination that the penalty is necessary to achieve the purposes of the Act."

The factors related to the use of the skid loader by underage employees listed by Lynnville as not properly considered by the Agency were, in fact, discussed and considered by the Agency in reaching its decision. Moreover, the Court has already determined the Agency properly construed and applied the regulation prohibiting minor employees from using the skid loader, and the factors listed by Lynnville would not affect this determination in any way.

Additionally, the factors related to the other child labor violations listed by Lynnville were also, contrary to the Company's assertions, properly considered by the Agency. The Agency imposed penalties for violations of the record keeping requirements of 29 C.F.R. § 516.2, the employment of three 13–year–olds in violation of 29 C.F.R. § 570.117, the employment of underage persons in an occupation involved in interstate transportation in violation of 29 C.F.R. § 570.33, and employment of school-age persons at times not permitted by 29 C.F.R. § 570.35.

The Court first notes and concurs with the finding "that Form WH–266 incorporates the mandatory regulatory factors into its penalty schedule, and consequently is appropriately utilized to calculate penalties for child labor violations." *Thirsty's, Inc.*, 57 F.Supp.2d at 436–37 (discussing Form WH–266 and determining that it does take into consideration the regulatory factors in assessing a penalty after reviewing all of the relevant factors and the provisions of Form WH–266). Moreover, Form WH–266 "is merely a starting point for assessing a penalty for child labor violations" as this "initial calculation ... may be modified by the District Director, an ALJ, or the ARB." *Id.* at 436.

Furthermore, these regulations contain no abatement for the fact that the minor employees set their own hours. Nor do the regulations contain a reprieve for violations if such occurred with the permission of the minors' parents. When an employer chooses to employ minors, the law places a congressionally obligated mandate on the *employer*, not the parents or the minor employees, to regulate the hours and duties of those minors. In other words, this duty cannot be delegated.

Additionally, the Agency imposed penalties far below the statutorily proscribed maximums for child labor violations. Under the auspices of the FLSA, the Agency could have assessed a fine up to a maximum of $10,000 per child per violation. The fact that there were no findings of willfulness and that Lynnville agreed to comply with child labor standards in the future resulted in a lower penalty as the regulatory penalty schedule requires the base assessment be multiplied by a factor of 1.5 where such aggravating factors are present. That no such computation was undertaken is evidence that the Agency considered the lack of the aggravating factors and is further proof the Agency properly accounted for these relevant factors in making the penalty assessment.

While the regulations do not *require* that a fine be assessed for child labor violations, neither do they provide for no fine when certain circumstances exist. Indeed, there is no legal authority for the contention that penalties are not allowed under the circumstances present here. This determination is left to the Agency. In the present case, the Agency considered the facts presented and reached its decision based upon the applicable statutory and regulatory factors. The record is replete with discussion of these factors, both by the ALJ in discussing the original assessment by Deputy Director Chleborad and later in making his own examination, and by the ARB. The Court has further looked at the relevant factors allegedly absent from the Agency determination and found the Agency adequately took those

factors into account in making its determination and that the relevant factors support the penalty imposed. The Court finds the agency properly considered the relevant factors and did not abuse its discretion in assessing penalties to Lynnville for both the child labor laws in general and the HO violation in particular, and the Agency's decision is not unwarranted in law or unjustified by the facts.

### b. Due Process

Lynnville claims that the alleged failure of the Agency to address the aforementioned factors is a violation of its due process rights under the Constitution. According to Lynnville, the Agency's conduct in assessing the penalty violates the purpose of the regulation, thereby depriving Lynnville of due process. Lynnville asserts the Agency's assessment of the fines and the ALJ's confirmation of the penalty deprived Lynnville of its right to due process because the fines were assessed without full consideration of the relevant factors and the policy of enforcement.

The Agency summarily dismisses the due process argument made by Lynnville in a footnote, stating

> Plaintiff cites absolutely no legal authority for this proposition. Defendants know of no authority for the proposition that an agency is constitutionally required to specifically address each claim of mitigation put forward by a party in proceedings under its jurisdiction, and to do so in a manner satisfactory to that party. The record of the case demonstrates that the agency considered and discussed the factors raised by Plaintiff. It only failed to accord them the dispositive weight which Plaintiff contends they merit. Because Plaintiff has not provided the Court with any legal authority or

legal analysis upon which one can determine the legal basis for the claim, Defendants are not in a position to discuss it further.

Lynnville failed to remedy this perceived deficiency in its reply brief, discussing the failure to consider relevant factors solely as an abuse of discretion and not a violation of its due process.[8]

■ As discussed above, the form used by the Agency in assessing the appropriate penalty took into consideration many of the relevant factors listed by the pertinent regulations. Moreover, the decision of the ALJ analyzed and dismissed Lynnville's argument that the Agency failed to consider all of the mitigating factors. The ALJ noted the Agency did not consider all of the listed factors. The ALJ does, however, find the Agency considered "most" of the factors set forth. Moreover, the ALJ continued and conducted an independent evaluation of the factors and concluded there was no reason to depart from the Agency's determination.

The ARB conducted a *de novo* review of the ALJ's Decision and Order and found it was fully supported by the facts and relevant law in adopting the decision. Specific to the due process claim made by Lynnville, the ARB states "this argument completely overlooks the facts that the ALJ properly recognized that he was not bound by the Form WH–266 schedule and that he conducted an independent review and consideration of the [relevant] factors." (Tr. 799.)

The Court likewise finds Lynnville's due process argument without merit. The relevant factors have been reviewed and considered at multiple administrative levels, in addition to that done by this Court. This

---

8. The Court notes Plaintiff's failure to adequately support this contention but analyzes the argument anyway.

included the original determination by the investigator according to the Form WH–266 schedule, a review of the investigator's findings and actual determination of penalties to assess by Deputy Director Chleborad, the independent review by the ALJ, and the *de novo* review by the ARB. While Chleborad's consideration of the factors was not exhaustive according to the ALJ, it was based on a form that took into consideration most of the relevant factors, and the ALJ found Chleborad had taken into account many if not most of the relevant factors, and those not taken into consideration did not affect the ALJ's determination. The further consideration by the ALJ and ARB served to fully enhance compliance with Lynnville's due process rights. Consequently, the Court finds no violation of Lynnville's due process rights occurred under the administrative proceedings in the present case.

### c. Equitable Estoppel

Lynnville argues the alleged "deal" between the investigator and the Company should be upheld. Defendants characterize this contention as a claim of equitable estoppel, while Plaintiff merely seems to include it as another instance where the ALJ failed to consider all relevant factors and therefore made an error in judgment, with that error being arbitrary and capricious. The Court finds the Agency's characterization appropriate and analyzes the arguments on this basis but will also briefly discuss Plaintiff's contention that the Agency determination on this matter was a failure to consider all relevant factors.

The Company argues that based on representations made by the investigator at a meeting between the investigator and company officials, it came to believe that the Company would not be fined if it brought itself into compliance. Indeed, several company officials present at the meeting testified to this effect at the administrative hearing. Lynnville asserts the ALJ erred in believing the investigator's version of the discussion at that meeting and finding the evidence supported the Agency's position.

The Agency contends Lynnville's argument is baseless and that the Agency decision on this issue should be affirmed. The Government contends that (1) the Agency findings are supported by substantial evidence, (2) the Company cannot show the affirmative misconduct required to support an estoppel claim against the Government, and (3) even if Lynnville could show affirmative misconduct, it has failed to satisfy the other common law elements of estoppel.

### (i) Substantial Evidence to Support Findings

The Government argues the dispute essentially amounts to the resolution of differing versions of a conversation reflected in the testimony of various witnesses, constituting a credibility determination. After observing detailed testimony from the investigator and company officials involved in the conversation, the Agency contends the ALJ found the inspector's version of the facts more credible. Indeed, the ALJ cited to portions of the transcript in support of this determination. The ARB noted that the ALJ found the evidence conflicting on this issue but ultimately found the evidence tended to support the Agency's contention that the agreement to assess no penalties extended only to the wage and hour violations. The ARB found no reason to overturn this determination.

A court generally defers to the credibility determinations of an agency upon judicial review of the agency's decision and will affirm that determination if supported by substantial evidence. *See Estes,* 275 F.3d at 724. "Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind might find it adequate to support the conclusion."

*Moad v. Massanari,* 260 F.3d 887, 890 (8th Cir.2001). Even if the Court finds the record supports two inconsistent positions, the Court can find the agency decision is supported by substantial evidence. *Edwards,* 314 F.3d at 966; *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir.2001).

■ The Agency ultimately made the factual determination that the verbal agreement by the investigator to assess no penalties if the Company came into compliance extended only to the wage and hour violations and not to the child labor violations. Based on the foregoing statement of law and upon a review of the record, the Court finds this determination is supported by substantial evidence. While the statements made by Plaintiff's witnesses on this issue tend to support Plaintiff's contentions, this is not sufficient where other evidence also exists to support the ALJ's determination.

In this case, there was testimony by the investigator contradicting the Company's witnesses. The investigator testified two distinct and separate issues were discussed at the meeting, the wage and hours violation and the child labor laws violation. He states these discussions were separate, though both were discussed during the same meeting. The investigator claims any exoneration or reprieve from fines was solely on the wage and hours issue and was contingent on bringing the Company into compliance.

Some testimony of the Company's witnesses could be construed to support the investigator's recollection, even though they ultimately claimed they believed the deal was all-encompassing. The apparent emotional atmosphere of the meeting may have contributed to a lack of communication. Through follow-up correspondence, the Agency immediately tried to reduce any misunderstanding on this issue. The ALJ based his determination in part on factors not before this Court, e.g., the de-

meanor of the witnesses, that may have affected his credibility assessment of the witnesses. The Court must accept those determinations made by the ALJ on this basis. In short, based on the foregoing, the Court finds the Agency's determination was supported by substantial evidence.

## (ii) Absence of Affirmative Misconduct

By finding the Agency's factual determination is supported by substantial evidence, the Court need not consider whether the investigator's comments would have bound the Agency and affected its legal authority to impose a fine in this case. However, the Court will analyze Lynnville's argument in light of the applicable legal standards.

■ The principles of law applicable to an estoppel claim against the Government have been summarized as follows:

> To establish a claim of equitable estoppel against the government, the claimant must prove: 1) false representation by the government; 2) that the government had the intent to induce the plaintiff to act on the misrepresentation; 3) the plaintiff's lack of knowledge or inability to obtain the true facts; and 4) the plaintiff's reliance on the misrepresentation to his detriment. *Story v. Marsh,* 732 F.2d 1375, 1383 (8th Cir.1984). In addition to proving the traditional elements of estoppel, the plaintiff must first establish that the government committed the affirmative misconduct.

*Rutten v. United States,* 299 F.3d 993, 995 (8th Cir.2002) (additional citations omitted). Additionally, the Eighth Circuit recently stated the following:

> The Supreme Court has long and consistently held that "the Government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Serv. of Crawford County,*

*Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Although the Court has left open the possibility that "affirmative misconduct," *Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), might justify estoppel against the government in some circumstances, we see no such misconduct here.

*Mancini v. Redland Ins. Co.,* 248 F.3d 729, 735 (8th Cir.2001) (finding no claim for estoppel where plaintiffs failed to file a complete application for payment under a flood insurance program because an agent of the Government had told them the application they had filed had been accepted). "In fact, 'in the absence of affirmative misconduct by the government, not even the temptations of a hard case ... justify applying an estoppel against the [government].'" *Harrod v. Glickman,* 206 F.3d 783, 793 (8th Cir.2000) (quoting *Conforti v. United States,* 74 F.3d 838, 841 (8th Cir. 1996), and finding no claim for estoppel where plaintiffs erroneously filed for and received benefits from the government premised on weather damage to their crops, where the actual damage was from a chemical fungicide, and in subsequent action for damages against the chemical manufacturer, the plaintiffs allowed the jury to be advised that the government would not seek reimbursement for the improperly paid benefits, thereby reducing the jury award, all based upon the representation of an agency attorney of the government).

█ As outlined, Lynnville must first establish affirmative misconduct on the part of the offending government agency for the Court to even consider whether the elements of an equitable estoppel claim are present. In this case, Lynnville has not alleged, much less established, the requisite affirmative misconduct. As will be more fully discussed below, the alleged "deal" seems to be more the result of poor communication and a misunderstanding than any "affirmative misconduct" on the part of the Agency or its investigator.

### (iii) Additional Elements of Estoppel

Even if Lynnville could establish the requisite affirmative misconduct precedent to an estoppel claim against the Government, which it has not done on the record before the Court, the Company must further meet the common law elements of estoppel. The Company cannot meet this requirement in the present case. If the Agency's findings are accepted, there was no material misrepresentation of any kind made by the investigator. However, even if the Company's contentions are taken as true, there arguably was no material misrepresentation as Lynnville only argues "[i]t was their *understanding,* based on the words of the investigator ..." (emphasis added). All of the papers signed relating to this so-called "deal" had to do with the wage and hours violations, and the Company's witnesses testified at hearing that it was their belief that no penalties at all would be assessed while simultaneously referring only to discussions surrounding the wage and hours violations when this "deal" was supposedly struck. At best, this evidence merely indicates poor communication between the investigator and Company officials, and it was within the power of the Company to clarify its "understanding" at the time of the initial meeting.

Furthermore, there is no allegation that the investigator made a misrepresentation intending that the Company act in any manner favorable to the Government. Any *quid pro quo* related to the Company coming into compliance with the applicable statutes and regulations. Thus, the investigator did nothing more than entreat the Company to obey the statutes and regulations applicable to it and its employees.

Finally, there is no detrimental reliance here. As the Government states, "[b]ringing one's employment practices into conformance with the law cannot be construed to be detrimental reliance triggering any estoppel. It is only an agreement to do what one was supposed to be doing all along." In other words, the voluntary performance of acts that could be legally compelled does not constitute detrimental reliance; rather, Plaintiff must show the government agent's misrepresentation caused Plaintiff to detrimentally alter its position, see *Stockmen's Livestock Market, Inc. v. Norwest Bank of Sioux City, N.A.,* 135 F.3d 1236, 1242 (8th Cir.1998), and Lynnville has failed to meet that element in the present case.

Thus, even if the Agency's factual determination of this issue were not supported by substantial evidence, which the Court has found it is, Plaintiff would still fail on any claim of equitable estoppel. Not only does Lynnville fail to proffer evidence as to affirmative misconduct on behalf of the Government, the Company has also failed to meet the other elements necessary to make out a claim of estoppel. Lynnville has not shown any misrepresentation by the Government, an intent to induce by the Government, an inability of the Company to find out the true facts, or that it detrimentally relied on the perceived "deal" with the investigator. Therefore, Lynnville's argument that the Agency was estopped from assessing any civil money penalties for the child labor violations due to the investigator's imputation fails so far as this argument can be characterized as a claim of equitable estoppel.

### (iv) Failure to Consider as a Relevant Factor

As previously determined by the Court, the Agency properly considered the relevant factors in assessing the reasonableness of the penalties assessed against Lynnville for the Company's child labor violations. The Court further finds the ALJ and the ARB also considered Lynnville's contention that the investigator intimated no penalties at all would be assessed if the Company came into compliance in making that determination. Even if the Agency had not considered this as part of its determination of the reasonableness of the penalties at the ALJ and ARB stages of the administrative proceedings, this factor would not be enough to tip the reasonableness determination such that this Court could find the assessed penalties inappropriate.

In finding the Agency properly considered the relevant factors, that Lynnville's due process rights have not been violated, and that the Agency is not equitably estopped from assessing the fines, the Court finds the Agency decision to assess penalties against Lynnville for the Company's violations of child labor laws is supported by substantial evidence and is not arbitrary and capricious. As such, the Agency did not abuse its discretion, and these penalties are affirmed.

### CONCLUSION

The law applies equally to the employer who acts with the best of intentions as it does to the employer who would subject minor laborers to dangerous and abusive conditions. Under the circumstances of this case, the frustration expressed in the record by management at Lynnville Transport is not surprising. The record indicates a benevolent effort to provide work opportunities to young people, without significant interference to their education, under the watchful attention of their parents, and with potential, but not actual, peril. The task of this Court, however, is to apply the law, not offer social commentary. Therefore, under the facts of the case, applicable law, and the narrow scope of this Court's review of agency action, the

Court finds the decision of the Agency is supported by substantial evidence and was not clearly erroneous or an abuse of discretion. The decision of the Agency is **affirmed,** and the case is **dismissed.** The Clerk of Court is directed to enter judgment for the Defendant and against the Plaintiff.

**IT IS SO ORDERED.**