# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3995

_____

St. Luke's Methodist Hospital,      *

      *

     Appellee,     *

      *   Appeal from the United

     v.     *   States District Court for the

      *   Northern District of Iowa.

Tommy G. Thompson, Secretary     *

of the United States Department     *

of Health and Human Services,     *

      *

     Appellant.     *

_____

Submitted:  October 9, 2002

Filed:  January 13, 2003

_____

Before HANSEN, Chief Judge, and HEANEY and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The Secretary of Health and Human Services appeals the order of the district court[1] granting summary judgment to St. Luke's Hospital.  The hospital challenged

_____

[1]The Honorable Michael J. Melloy, then United States District Judge for the Northern District of Iowa, now United States Circuit Judge for the Eighth Circuit Court of Appeals.

the Secretary's denial, in part, of its request for an upward adjustment from the routine cost limit applicable to hospital-based skilled nursing facilities (SNFs).  We affirm.

## I.

By statute, the federal government reimburses SNFs for the "reasonable cost" of covered services that they provide to medicare beneficiaries.  "Reasonable cost" is the cost "actually incurred, excluding any part ... unnecessary in the efficient delivery of needed health services," and it is calculated according to regulations.  42 U.S.C. § 1395x(v)(1)(A).  SNFs are grouped as to whether they are free-standing or hospital-based and whether they are urban or rural, and a "routine cost limit" (RCL) is set for each group of SNFs.  *See* 42 U.S.C. 1395yy(a).  In 1980, the RCL for each group of SNFs was 112% of the mean per diem routine service cost for that group.  *See* 45 Fed. Regis. 58699, 58700 (Sept. 4, 1980).

The actual per diem cost for hospital-based SNFs, such as St. Luke's, is higher than the cost for free-standing SNFs.  The parties agree that this difference is based, in part, on the fact that hospital-based SNFs are more likely to treat patients who are sicker and who receive more intensive care, but the Secretary contends that part of the difference in costs results from the inefficiency of hospital-based SNFs.

In 1984, Congress changed the formula for calculating the RCL for hospital-based SNFs, which resulted in a lower RCL, but it did not alter the formula for calculating the RCL for free-standing SNFs.  *See* 42 U.S.C. § 1395yy(a).  Under the new formula, the RCL for hospital-based SNFs is the RCL for free-standing SNFs plus fifty percent of the amount by which 112% of the mean per diem cost for hospital-based SNFs exceeds the RCL for free-standing SNFs.  *See id.*  Section 1395yy(a) thus cut in half the amount by which the RCL for hospital-based SNFs exceeded the RCL for free-standing SNFs.  For example, as explained in *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 942 (6th Cir.2000), if the RCL for free-

standing SNFs is $80, and 112% of the mean per diem cost for hospital-based SNFs is $120, then the RCL for hospital-based SNFs would be $100.

Another subsection of § 1395yy provides that the Secretary "may make adjustments" in the cost limits for any SNF to the extent that the Secretary "deems appropriate, based upon case mix or circumstances" beyond the facility's control. *See* 42 U.S.C. § 1395yy(c). The relevant regulation, 42 C.F.R. § 413.30 (1996), sets forth general rules to establish "reasonable" limits for provider costs, as well as "rules governing ... adjustments to limits" that the Secretary "may make as appropriate in consideration of special needs or situations of particular providers."

St. Luke's sought reimbursement based on § 413.30(f)(1), under which the Secretary may grant an upward adjustment for "atypical services." This adjustment may be granted only if the SNF shows that the cost of items or services provided "exceeds the applicable limit because such items or services are atypical in nature and scope" compared to those "generally furnished by providers similarly classified," and that the "[a]typical items or services are furnished because" of the patients' "special needs ... and are necessary in the efficient delivery of needed health care." *Id.* Any upward adjustment may be made "only to the extent the costs are reasonable, attributable to the circumstances specified, separately identified by the provider, and verified by the intermediary." 42 C.F.R. § 413.30(f) (1996).

Until 1994, the Secretary granted St. Luke's an upward adjustment for the actual cost of atypical services that it provided to medicare patients in its SNF. That year the Secretary published a new provision of the Medicare Provider Reimbursement Manual, PRM § 2534.5. The interpretive rules in this manual do not require notice and comment or "have the force and effect of law." *Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 99 (1995). PRM § 2534.5, however, did change the way in which the Secretary determined whether an upward adjustment would be granted to a hospital-based SNF. Under PRM § 2534.5, the Secretary

denied hospital-based SNFs an upward adjustment for all costs between the RCL and 112% of the peer group mean. Therefore, using the example that we used earlier in this opinion, the Secretary would deny reimbursement for actual costs expended by the hospital-based SNF that exceeded $100 (the RCL) but did not exceed $120 (112% of the peer group mean) even if those costs resulted from the provision of atypical services. PRM § 2534.5 thereby created what St. Luke's refers to as a "gap" within which a hospital-based SNF was categorically denied an adjustment regardless of the reason for the costs incurred.

In this action, the Secretary acknowledges that but for PRM § 2534.5, St. Luke's would qualify for an atypical-services adjustment for costs that it expended within the "gap" during the fiscal year ending in 1992. The parties agree that PRM § 2534.5 is relevant to the 1992 adjustment because St. Luke's did not apply for the adjustment until after PRM § 2534.5 was published. After St. Luke's received a final decision from the Secretary denying reimbursement for its 1992 costs that were above the RCL but below 112% of the mean per diem, it sought judicial review in federal district court. The district court concluded that PRM § 2534.5 was "an unreasonable interpretation of 42 C.F.R. § 413.30 in light of the language of that regulation and the principles underlying the Medicare statute" and ordered the Secretary to pay the hospital the adjustment. *See St. Luke's Methodist Hosp. v. Thompson*, 182 F. Supp.2d 765, 768, 788 (N.D. Iowa 2001). The Secretary appealed.

II.

"We review the district court's decision *de novo*, making our own independent review of the Secretary's decision" under the Administrative Procedure Act (APA). *Shalala v. St. Paul-Ramsey Medical Center*, 50 F.3d 522, 527 (8th Cir. 1995). Under the APA, the Secretary's decision is "set aside if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or contrary to law." *Hennepin County Med. Ctr. v. Shalala*, 81 F.3d 743, 748 (8th Cir.1996); *see also* 5 U.S.C. § 706(2)(A).

The parties disagree as to how much deference, if any, we must give to PRM § 2534.5, which the Secretary characterizes as the agency's interpretation of § 413.30(f), the regulation that addresses adjustments to the RCL. Of course, if a regulation is plain on its face, we will give no deference to an agency's attempt to interpret it. *See Christensen v. Harris County*, 529 U.S. 576, 588 (2000) We do not believe, however, that the degree to which St. Luke's is entitled to reimbursement is established by the plain language of § 413.30(f), which permits an adjustment for "reasonable" costs "attributable" to the provision of atypical services.

Where a regulation's plain language does not control the issue, we must uphold an agency's interpretation of its own regulation unless that interpretation is "plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997). We give "substantial judicial deference" to an agency's "longstanding interpretation" of its own regulation if it is "reasonable," *see United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 220 (2001), although its "interpretation need not be the best or most natural one by grammatical or other standards," *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991); *see also Chalenor v. University of North Dakota*, 291 F.3d 1042, 1046 (8th Cir. 2002).

But the district court concluded, relying on *Christensen*, 529 U.S. at 587, that it need not defer to PRM § 2534.5 because, *inter alia*, the interpretation was not created through rulemaking procedures. *See St. Luke's*, 182 F. Supp. 2d at 777-780. Although the Secretary admits that PRM § 2534.5 was not subjected to APA rulemaking procedures, he contends that the district court mistakenly relied on the holding in *Christensen* that addresses an agency's interpretation of a *statute* to address an interpretation of a *regulation*. We need not, however, resolve this controversy because we conclude, for reasons that will follow, that PRM § 2534.5 is a "plainly erroneous" interpretation of the provisions that allow the Secretary to grant an upward

adjustment to hospital-based SNFs and thus, in any event, PRM § 2534.5 is not entitled to our deference.

### III.

To support the reasonableness of PRM § 2534.5, the Secretary first points to the discretion granted to him by statute, *see* 42 U.S.C. § 1395yy(c) and regulation, *see* 42 C.F.R. § 413.30(f) (1996). The Secretary contends that he need not allow upward adjustments at all and has the power to determine who will be given an adjustment and the amount of that adjustment. The Secretary also argues that he is not required to exercise his discretion on a case-by-case basis but may make an across-the-board rule, such as PRM § 2534.5.

While we agree that the Secretary has discretion, to acknowledge this "is not to say that [he] may do whatever [he] wishes," *City of St. Louis v. Department of Transp.*, 936 F.2d 1528, 1533 (8th Cir. 1991). Although an agency does not abuse its discretion if it takes into account the relevant considerations, is not significantly influenced by anything irrelevant, and comes to a conclusion that is "not clearly wrong," *id.*, we believe that here the Secretary relied on an irrelevant statutory provision to reach a conclusion that is obviously incorrect.

An adjustment for atypical services may be made "only to the extent the costs are reasonable" and attributable to the provision of the atypical services, *see* 42 C.F.R. § 413.30(f) (1996). The Secretary contends that PRM § 2534.5 interprets the regulation to "implement[]" the conclusion of Congress that some costs of hospital-based SNFs are not "reasonable." He also argues that because Congress was concerned about the efficiency of hospital-based SNFs when it enacted § 1395yy(a), it is reasonable to conclude that the costs of hospital-based SNFs that fall within the "gap" between the RCL and 112% of the mean per diem costs are "attributable" to inefficiency, rather than to providing atypical services. Under PRM § 2534.5, any amount within the "gap" is automatically disallowed for atypical services even if the

costs expended for those services are, in fact, verified by the intermediary and "necessary in the efficient delivery of needed health care," *see* 42 C.F.R. § 413.30(f) (1996).

We agree with the district court that the Secretary, in his attempt to justify PRM § 2534.5, confuses two distinct concerns:  reimbursement of SNFs for their typical costs (addressed in § 1395yy(a)) and reimbursement of an individual SNF for providing services atypical of similarly classified providers (addressed in § 1395yy(c)).  Section 1395yy(a) provides a formula for reimbursing the typical costs of hospital-based SNFs; it does not speak to adjustments based on the "special needs or situations" of "particular providers," *see* 42 C.F.R. § 413.30(a) (1996).  Assuming, without deciding, that Congress enacted § 1395yy(a) in 1984 in part because of concerns about the efficiency of hospital-based SNFs as a group, we note that at the same time Congress elected not to restrict upward adjustments "based upon case mix or circumstances" beyond an individual hospital-based SNF's control, *see* 42 U.S.C. § 1395yy(c):  Significantly, § 1395yy(c) authorizes upward adjustments to "any skilled nursing facility" without distinguishing between hospital-based SNFs and free-standing SNFs, or using any language that supports the "gap" created by PRM § 2534.5.

We note moreover that § 1395yy(c) states that the Secretary "may make adjustments in the limits set forth in subsection (a)," and we believe that Congress intended by this provision to allow adjustments to be made to the RCL, not to some point above the RCL.  Also, the pertinent regulation states that a SNF may be compensated for atypical services if it can show the "[a]ctual cost ... exceeds *the applicable limit*," *see* 42 C.F.R. § 413.30(f)(1)(i) (1996) (emphasis added), and we believe that the "applicable limit" is the RCL for that particular SNF, not 112% of the mean per diem cost for hospital-based SNFs.  We think that these upward adjustments are intended to give SNFs a kind of "safety net" that prevents them from being penalized for providing necessary atypical services to medicare patients.

Furthermore, we have seen no evidence to support the conclusion that PRM § 2534.5 promotes efficiency or helps medicare recipients receive the care they need. While we agree with the Secretary that Congress has sought to eliminate costs that are not "necessary to the efficient delivery of health care," we fail to see how PRM § 2534.5 is a means to this end. We note that when the final regulation was first published it was stated that an exception to the RCL was warranted to encourage shorter lengths of stay that "result in cost savings," *see* 44 Fed. Regis. 31802, 31802-03 (June 1, 1979). The Secretary has offered no evidence to the contrary, and, in fact, he concedes that St. Luke's provided medicare patients a high level of care while, at the same time, keeping overall costs down, because patients stayed a shorter length of time in its facility.

Rather than placing an upward limit on the cost of atypical services, PRM § 2534.5 denies reimbursement for the first dollar above the RCL. We believe that PRM § 2534.5 is likely to discourage efficient hospital-based SNFs that have typical costs below the RCL from providing atypical services to those who need them because the SNFs will not be reimbursed for the reasonable cost of those services. We conclude that such an effect is contrary to the intent of medicare to reimburse costs that are "[]necessary in the efficient delivery of needed health services." *See* 42 U.S.C. 1395x(v)(1)(A); *see also* 42 C.F.R. § 413.30(f)(1) (1996).

The Secretary thus attempts to justify categorically denying an upward adjustment for costs that would have been reimbursed under the previous interpretation of a fifteen-year-old regulation, *see* 44 Fed. Regis. 31802, 31804 (June 1, 1979); 42 C.F.R. § 405.460(f)(1)(1980), by relying on a ten-year old statutory provision that does not address upward adjustments, *see* 42 U.S.C. § 1395yy(a). We are mindful that the Secretary is not required to interpret a regulation in the most reasonable manner in order for us to defer to his interpretation. *See Chalenor*, 291 F.3d at 1046. But we are convinced for all of the above reasons that the Secretary's interpretation of § 405.460(f) to deny hospital-based SNFs all

costs expended within the "gap" is unreasonable and arbitrary. The Secretary has acknowledged that absent the interpretation set forth in PRM § 2534.5, St. Luke's would be entitled to the reimbursement that it seeks.

We recognize that *St. Francis*, 205 F.3d at 948, renders a different conclusion from ours, but we respectfully disagree with that holding for the reasons that we have indicated.

Accordingly, we affirm the decision of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.