# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 23, 2015          Decided April 10, 2015

No. 14-5122

ADIRONDACK MEDICAL CENTER, ET AL.,
APPELLANTS

v.

SYLVIA MATHEWS BURWELL, IN HER OFFICIAL CAPACITY AS
SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00313)

*Ankur J. Goel* argued the cause for appellants. With him on the briefs was *Johnny H. Walker*.

*Daniel J. Hettich* was on the brief for amici curiae Knox Community Hospital, et al., in support of appellants.

*Abby C. Wright*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney at the time the brief was filed, and *Michael S. Raab*, Attorney.

Before: TATEL, *Circuit Judge,* PILLARD, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the court filed PER CURIAM.

PER CURIAM:   The Medicare program provides federally funded healthcare to the elderly and the disabled. *See* Title XVIII of the Social Security Act, Pub. L. No. 89-97, 79 Stat. 291 (1965), *as amended*, 42 U.S.C. § 1395 *et seq.* Under a "complex statutory and regulatory regime" called Medicare Part A, the Government reimburses participating hospitals for care that they provide to inpatient Medicare beneficiaries. *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 404 (1993). "[T]he labyrinthine world of Medicare has two types of hospitals that enjoy different reimbursement schemes." *Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 694 (D.C. Cir. 2014). Most hospitals are reimbursed for inpatient hospital services pursuant to a standardized rate under 42 U.S.C. § 1395ww(d). However, the Social Security Act also provides a method for calculating reimbursement rates for certain rural hospitals: those that qualify as "sole community hospital[s]" ("SCHs"), *see id.* § 1395ww(d)(5)(D), and those that qualify as "medicare-dependent small rural hospital[s]" ("MDHs"), *see id*. § 1395ww(d)(5)(G).

Appellants in this case are MDHs and SCHs. They challenge revisions made by the Secretary of the Department of Health and Human Services ("Secretary") to the rules covering their Medicare reimbursements for inpatient hospital services. The District Court rejected Appellants' claims, *Adirondack Med. Ctr. v. Sebelius*, 29 F. Supp. 3d 25 (D.D.C. 2014); *Adirondack Med. Ctr. v. Sebelius*, 935 F. Supp. 2d 121 (D.D.C. 2013), holding, *inter alia*, that the Secretary acted within her authority and reasonably in adjusting the disputed reimbursement requirements under the statute. Appellants

now urge this court to reverse the judgments of the District Court in favor of the Secretary, grant their motions for summary judgment, and remand the case with instructions to the District Court to enter judgment in favor of Appellants. After careful review of the record, we hold that the Secretary's actions were neither "arbitrary, capricious, [nor] manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). We therefore affirm the judgment of the District Court.

\* \* \* \*

When an SCH or MDH discharges a patient insured by Medicare, it receives reimbursement based on either the standard federal rate or a hospital-specific rate derived from its actual costs of treatment in one of the base years specified in the statute, whichever is higher. 42 U.S.C. § 1395ww(d)(5)(D), (G); 42 C.F.R. §§ 412.92, 412.108. The Secretary determines an MDH or SCH's hospital-specific reimbursement rate using the most favorable base year available.

To calculate reimbursement for a particular patient, the Secretary multiplies the hospital's base rate by the appropriate group weight – a number representing how resource-intensive the patient's condition was to treat. *See* 42 C.F.R. §§ 412.78(f), 412.79(e). Each year, the Secretary is required to revise group weights based on changes in technology and medical best practices. 42 U.S.C. § 1395ww(d)(4)(C)(i). The statute also requires that these revisions have no effect on aggregate Medicare payments – in other words, that they be budget neutral. *Id.* § 1395ww(d)(4)(C)(iii). The Secretary eliminates any variation in aggregate payments by applying a uniform "budget neutrality adjustment" to all reimbursement rates throughout the Medicare system. *See, e.g.*, Medicare

Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1994 Rates, 58 Fed. Reg. 30,222, 30,269 (May 26, 1993). The budget adjustments are cumulative, meaning that the Secretary does not remove the previous year's adjustment from the database before calculating the next year's adjustment. *Id.*

Prior to 2006, the budget neutrality adjustments applied to the hospital-specific MDH and SCH rates in a straightforward way: once a base year was chosen and the rate was calculated, the Secretary applied every budget neutrality adjustment from 1993 (when Congress began requiring adjustments) to the present. In 2006, Congress added 2002 as a new base year for MDHs. The Secretary issued instructions to fiscal intermediaries (contractors who process and make claims for Medicare payments) stating that when 2002 was used as the base year, only adjustments from 2003 forward would apply. The Secretary inadvertently failed to instruct that adjustments before 2003 should also be included in the calculation, as they had been before Congress added the new base year. In 2008, Congress added 2006 as a new base year for SCHs, and the Secretary issued similar guidance to fiscal intermediaries, instructing them to apply only adjustments from 2007 forward to that base year.

Six weeks after issuing the 2008 instructions for SCHs, the Secretary determined that they were erroneous and rescinded them. In 2009, she changed the 2006 instructions for MDHs through notice and comment rulemaking. Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and Fiscal Year 2010 Rates; and Changes to the Long-Term Care Hospital Prospective Payment System and Rate Years 2010 and 2009 Rates, 74 Fed. Reg. 43,754, 43,896 (Aug. 27, 2009). Reimbursements to both types of hospitals now incorporate

all adjustments from 1993 forward, as they did under the pre-2006 status quo. The principal thrust of Appellants' challenge is that the Medicare statute forbids the Secretary from modifying the hospitals' reimbursements with budget neutrality adjustments from years prior to the base year. We disagree.

* * * *

In support of their position, Appellants make four arguments, all of which lack merit. First, Appellants claim that 42 U.S.C. § 1395ww(b)(3)(C) and (D) bar the Secretary from applying budget neutrality adjustments from years preceding the base year. Second, Appellants argue that Section 1395ww(d)(4)(C)(iii) requires the Secretary to apply the entire budget neutrality adjustment directly to the group weights rather than, as the Secretary currently does, to the overall reimbursement rate. Third, Appellants argue that the Secretary's failure to apply the budget neutrality adjustment directly to the group weight arbitrarily reduces their reimbursement. Fourth, Appellants argue that the Secretary was barred from revoking her 2008 instructions without first pursuing notice and comment rulemaking.

Appellants' first argument fails because 42 U.S.C. § 1395ww(b)(3)(C) and (D) are irrelevant with respect to the application of budget neutrality adjustments. The reference to "applicable percentage increases" in those sections refers specifically to an inflation adjustment defined at 42 U.S.C. § 1395ww(b)(3)(B)(iv). It has no bearing on other aspects of the reimbursement formula, such as the budget neutrality adjustment.

Appellants' second argument also lacks merit. The clear command of 42 U.S.C. § 1395ww(d)(4)(C)(iii) requires the

Secretary to "assure[] that the aggregate payments . . . are not greater or less than those that would have been made for discharges in the year without" the annual group weight adjustments. *Id.* In other words, the Secretary must maintain budget neutrality when recalibrating reimbursements under the statute. Appellants do not dispute that the Secretary's adjustments successfully achieve the goal of budget neutrality. Appellants instead object to the precise methodology used by the Secretary. Appellants' arguments, however, fail to take into account the wide discretion afforded the Secretary to implement the Medicare reimbursement formula, including determining how to meet Medicare's budget neutrality requirements. *See id.* (requiring the Secretary to make adjustments "in a manner that assures" budget neutrality); *id.* § 1395ww(d)(5)(I)(i) (authorizing the Secretary to make "other exceptions and adjustments to such payment amounts under this subsection as the Secretary deems appropriate"); *Adirondack*, 740 F.3d at 694 (describing the Secretary's "broad-spectrum grant of authority"). There is little doubt here that the Secretary's chosen method of achieving budget neutrality lies within her broad discretion.

Appellants' third argument fares no better. In adjusting the hospital-specific rates as she did, the Secretary reasonably chose to achieve budget neutrality pursuant to a method that spreads the cost of budget neutrality fairly between MDHs, SCHs, and other hospitals. Appellants have failed to show that the Secretary's method requires them to absorb a disproportionate or unfair share of the budget neutrality adjustment.

Finally, Appellants' last argument – that the Secretary was required to use notice and comment rulemaking to rescind the 2008 instructions – has no legal basis in the wake of the Supreme Court's decision in *Perez v. Mortgage*

*Bankers Association*, 135 S. Ct. 1199 (2015). The Court's decision in *Perez* issued after Appellants had submitted their briefs to this court. In light of this intervening development, Appellants' counsel readily withdrew the last claim during oral argument. The court appreciates Appellants' forthright treatment of this matter.

\* \* \* \*

The Secretary acted pursuant to express delegations of authority under the Medicare Act in adjusting the disputed reimbursement requirements. The determinations made by the Secretary are neither "arbitrary or capricious in substance, [n]or manifestly contrary to the statute." *Mayo Found. for Med. Educ. and Research v. United States*, 562 U.S. 44, 53 (2011) (internal quotation marks omitted). They thus "warrant the Court's approbation." *Astrue v. Capato ex rel. BNC*, 132 S. Ct. 2021, 2034 (2012).