# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 8, 2023      Decided September 3, 2024

No. 22-5318

LAKE REGION HEALTHCARE CORPORATION,
APPELLANT

v.

XAVIER BECERRA, SECRETARY OF HEALTH AND HUMAN
SERVICES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-03452)

*Sven C. Collins* argued the cause and filed the briefs for appellant.

*Daniel J. Hettich*, *Rachel M. Wertheimer*, and *Barbara S. Williams* were on the brief for *amici curiae* Hospitals in support of appellant.

*Leif E. Overvold*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Michael S. Raab*, Attorney, *Samuel R. Bagenstos*, General Counsel, U.S. Department of Health & Human

Services, *Janice L. Hoffman*, Associate General Counsel, *Susan Maxson Lyons*, Deputy Associate General Counsel for Litigation, and *Jonathan C. Brumer*, Attorney.

Before: HENDERSON and KATSAS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*:   Under certain circumstances, qualifying hospitals that treat Medicare patients are entitled to an extra payment known as a volume-decrease adjustment (VDA), which must "fully compensate" the hospital for its "fixed costs."   42 U.S.C. § 1395ww(d)(5)(D)(ii).   To fully compensate for fixed costs, the Secretary of Health and Human Services must determine a hospital's actual fixed costs and then must subtract other, baseline payments that reimburse for those fixed costs.   This appeal turns on how to determine the reimbursed fixed costs.   It is a difficult question because the baseline payments for treating Medicare patients do not disaggregate between fixed costs, which remain constant no matter how many patients are treated, and variable costs, which increase with every patient.

In calculating VDA payments, the Secretary used to attribute the baseline reimbursements entirely to fixed costs. Under that approach, a hospital could not receive a VDA payment unless its fixed costs exceeded its baseline Medicare reimbursements.   But the baseline reimbursements, although not disaggregated, compensate for both fixed and variable costs. 42 U.S.C. § 1395ww(a)(4).   We hold that, in calculating the VDA, the Secretary may not deem them compensation for fixed costs alone.

3

I

A

Medicare pays hospitals for providing inpatient care to the elderly and disabled. 42 U.S.C. § 1395c *et seq.* Although the program previously reimbursed all "reasonable costs" incurred by hospitals to treat beneficiaries, *see Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1227 (D.C. Cir. 1994) (cleaned up), Congress established the inpatient prospective payment system to give hospitals greater "incentives … to control costs." *Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 205 (D.C. Cir. 2011).

Under that system, hospitals receive fixed, prospectively determined payments keyed to various "diagnosis related group[s]" (DRGs). *See* 42 U.S.C. § 1395ww(d)(3)(D). These payments reflect the average cost of treating particular conditions. *See id.* § 1395ww(d)(2)(A), (4)(A)–(B). The payments must account for "all routine operating costs, ancillary service operating costs, and special care unit operating costs," including "the costs of all services for which payment may be made." *Id.* § 1395ww(a)(4). Although DRG payments thus plainly cover both fixed and variable costs, they do not disentangle the two categories. Nor do they disentangle the "bundle" of "particular items or services" within the DRG itself. *Appalachian Reg'l Healthcare, Inc. v. Shalala*, 131 F.3d 1050, 1053 (D.C. Cir. 1997).

Special payment rules govern hospitals that are isolated or in rural areas. 42 U.S.C. § 1395ww(d)(5)(D), (G). A qualifying hospital must receive an additional payment, known as a volume-decrease adjustment, if the number of its annual inpatient cases decreases by more than five percent for reasons beyond its control. *Id.* § 1395ww(d)(5)(D)(ii), (G)(iii). This adjustment, combined with other Medicare reimbursements

received by the hospital, must "fully compensate the hospital for the fixed costs it incurs in the period in providing inpatient hospital services, including the reasonable cost of maintaining necessary core staff and services." *Id.* § 1395ww(d)(5)(D)(ii), (G)(iii).

## B

Over time, HHS has used three different methods to calculate the VDA. We refer to them as the "total-total," "fixed-total," and "fixed-fixed" approaches.

Under the total-total approach, the VDA is the difference between the hospital's *total* costs for treating Medicare beneficiaries and the *total* DRG payments it has received. HHS seemed to endorse this approach in guidance issued in 1990, *see* Provider Reimbursement Manual 15-1, § 2810.1(D), and in preambles to later rules fixing annual DRG payments, *see* Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2007 Rates, 71 Fed. Reg. 47,870, 48,056 (Aug. 18, 2006); Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2009 Rates, 73 Fed. Reg. 48,434, 48,631 (Aug. 19, 2008). This approach compensates qualifying hospitals for their fixed and variable costs.

Under the fixed-total approach, the VDA is the difference between the hospital's *fixed* costs for treating Medicare beneficiaries and the *total* DRG payments it has received. The Centers for Medicare & Medicaid Services, which administers Medicare for the Secretary, adopted this approach in 2014. *Unity Healthcare Muscatine, Iowa v. Blue Cross Blue Shield Ass'n/Wisc. Physicians Serv.*, 2014 WL 5450066, *5 (CMS Adm'r Sept. 4, 2014). CMS reasoned that because the total-total approach results in compensation for variable costs, it is inconsistent with the VDA's statutory limit to fixed costs. *Id.*

In contrast, the fixed-total method effectively treats all DRG payments as compensation for fixed costs, at least up to the amount of the hospital's total fixed costs. *Id.* This approach ensures that the VDA never compensates for even a penny of variable costs. *See id.* at \*5–6.

Under the fixed-fixed approach, the VDA is the difference between the hospital's *fixed* costs for treating Medicare beneficiaries and an estimate of what portion of its DRG payments afford compensation for those *fixed* costs. An estimate is necessary because HHS does not make available the actuarial data that would enable hospitals or administrative adjudicators to disaggregate DRG payments into portions attributable to fixed and variable costs. By using such an estimate, the fixed-fixed method acknowledges that DRG payments represent compensation for both kinds of costs.[1]

The Provider Reimbursement Review Board (PRRB), which hears administrative appeals regarding Medicare reimbursement decisions, developed the fixed-fixed method in a series of adjudications beginning in 2015. It has concluded that the fixed-total method used by CMS "takes the portion of the DRG payment intended for variable costs and impermissibly characterizes it as payment for the hospital's fixed costs." *Lake Region Healthcare Corp. v. Nat'l Gov't Servs., Inc.*, 2020 WL 13747016, \*10 (PRRB Aug. 14, 2020)

---

[1] The fixed-fixed approach caps the VDA at the amount calculated under the total-total approach. The cap rests on a regulation making hospitals ineligible for the adjustment in years when they make a profit treating Medicare patients. *See* Medicare Program; Changes to the Inpatient Hospital Prospective Payment System and Fiscal Year 1988 Rates, 52 Fed. Reg. 22,080, 22,091 (June 10, 1987). In other words, the VDA may not "exceed the difference between the hospital's Medicare inpatient operating costs and total [DRG] payments." *Id.* The cap is not at issue here.

(*Lake Region I*).  To implement the fixed-fixed method, the PRRB uses a hospital's own ratio of fixed costs to total costs for Medicare patients to estimate the percentage of DRG payments that compensate for fixed costs.  *Id.*  The PRRB has consistently applied the fixed-fixed method in reviewing hospital reimbursement decisions.  *See id.* at \*6 & n.45.  And CMS, which may review decisions of the PRRB, has consistently reversed those decisions in favor of its fixed-total approach.  *See id.*

In 2017, HHS changed course and adopted the fixed-fixed approach by rule.  82 Fed. Reg. 37,990, 38,180 (Aug. 14, 2017) (2017 Rule).[2]  HHS continued to defend the lawfulness of its fixed-total approach but acknowledged that hospitals wanted it to "make an effort, in some way," to disaggregate the fixed-cost and variable-cost components of DRG payments.  *Id.*  To estimate the percentage of DRG payments that compensate for fixed costs, the 2017 Rule uses the hospital's own ratio of "fixed inpatient operating costs" to "total inpatient operating costs" for treating all of its patients, Medicare and non-Medicare alike.  42 C.F.R. § 412.92(e)(3).  HHS imposed this new approach only prospectively, for cost-reporting periods after October 1, 2017.  *See id.*

---

[2]  The actual name of the rule is a mouthful:  Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Policy Changes and Fiscal Year 2018 Rates; Quality Reporting Requirements for Specific Providers; Medicare and Medicaid Electronic Health Record (EHR) Incentive Program Requirements for Eligible Hospitals, Critical Access Hospitals, and Eligible Professionals; Provider-Based Status of Indian Health Service and Tribal Facilities and Organizations; Costs Reporting and Provider Requirements; Agreement Termination Notices.

7

II

Lake Region Healthcare Corporation operates a hospital in Fergus Falls, Minnesota. In 2013, it experienced a decrease in Medicare inpatient discharges that qualified it for a VDA. Lake Region sought an adjustment of $1,947,967, which it calculated using the PRRB's variant of the fixed-fixed approach. J.A. 41. A Medicare contractor denied Lake Region any adjustment. Applying the fixed-total approach, the contractor concluded that no adjustment was permissible because Lake Region's *fixed* costs for the year for treating Medicare patients were less than its *total* DRG payments for the year. *Id.* at 59.

On administrative review, the PRRB and CMS continued their duel. The PRRB adhered to its fixed-fixed approach, reversed the contractor's decision, and awarded Lake Region the full amount of its requested adjustment. *Lake Region I*, 2020 WL 13747016, at *10–11. In turn, CMS adhered to its fixed-total approach, reversed the PRRB's decision, and reinstated the decision of the contractor. *Lake Region Healthcare Corp. v. Nat'l Gov't Servs., Inc.*, 2020 CMS Adm'r Decision LEXIS 11, at *37 (Sept. 29, 2020) (*Lake Region II*). Somewhat curiously, CMS asserted that the PRRB's fixed-fixed approach—a close variant of the approach that HHS now requires—"is in direct contradiction" with the Medicare statute, regulations, and agency guidance. *See id.* at *34–35.

Lake Region then sought judicial review. In the district court, it urged application of the total-total method or, in the alternative, the fixed-fixed method. The government defended CMS's application of the fixed-total method.

On cross-motions for summary judgment, the district court ruled for the government. *Lake Region Healthcare Corp. v. Becerra*, No. 1:20-cv-03452, 2022 WL 9936856 (D.D.C. Oct.

17, 2022) (*Lake Region III*).  First, the court ruled out use of the total-total method as "contradict[ing] the clear statutory directive that the VDA compensate only fixed costs." *Id.* at *8.  Then, the court concluded that both the fixed-total and fixed-fixed methods "fall within the range of permissible interpretations" of the governing statute. *Id.*  Citing *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837 (1984), the court reasoned that because the statute did not "specify" how HHS should calculate the VDA, Congress had "delegated" that question to HHS "[t]hrough its silence." *Lake Region III*, 2022 WL 9936856, at *8.  Moreover, it reasoned, payments for each DRG consist of a "single, undifferentiated number" that is not easily separated into its "fixed and variable components." *Id.* at *9.  The court thus endorsed CMS's reading of the statue as "reasonable, even if it might not be the best." *Id.*[3]

III

When the district court reviews a PRRB or CMS order, we review its decision *de novo*. *Forsyth Mem'l Hosp., Inc. v. Sebelius*, 639 F.3d 534, 537 (D.C. Cir. 2011).  Like the district court, we apply the judicial-review provisions of the Administrative Procedure Act.  *See* 42 U.S.C. § 1395*oo*(f)(1).  So we must independently "decide all relevant questions of law." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2272 (2024) (cleaned up); *see* 5 U.S.C. § 706(2).

This case turns on a question of statutory construction—whether CMS's total-fixed method for calculating volume-

---

[3] The district court further concluded that CMS's approach was consistent with HHS regulations and did not represent a break from prior agency precedent. *Lake Region III*, 2022 WL 9936856 at *5–7, *10–11.  Because we resolve this case on statutory grounds, we need not consider these rulings.

decrease adjustments is consistent with the statutory command to "fully compensate" qualifying hospitals for their "fixed costs." 42 U.S.C. § 1395ww(d)(5)(D)(ii). The district court deferred to HHS's reading of the statute under *Chevron*. *See Lake Region III*, 2022 WL 9936856, at *9–10. Other courts have done the same. *See, e.g.*, *Unity HealthCare v. Azar*, 918 F.3d 571, 577–78 (8th Cir. 2019); *Stephens Cnty. Hosp. v. Becerra*, No. 19-cv-3020, 2021 WL 4502068, *9–10 (D.D.C. Sept. 30, 2021). But *Chevron* has now been overruled, so we must "exercise independent judgment" in construing the Medicare statute. *Loper Bright*, 144 S. Ct. at 2262.

We hold that HHS's fixed-total approach does not afford the requisite full compensation for fixed costs. We recognize, as other courts have emphasized, that the statute does not specify exactly how HHS should calculate the VDA. But it does require attention to unreimbursed *fixed* costs—those a hospital has actually incurred minus those for which it has already been reimbursed. DRG payments cannot fairly be understood as compensation only for fixed costs. As noted above, they are keyed to the average cost of treating particular conditions within the DRG. 42 U.S.C. § 1395ww(d)(3)(A); *see also* 42 C.F.R. §§ 412.2(c), 412.64(a). And they cover "*all* routine operating costs, ancillary service operating costs, and special care unit operating costs," including "the costs of *all* services for which payment may be made." 42 U.S.C. § 1395ww(a)(4) (emphases added). DRG payments thus unambiguously compensate for *variable* as well as fixed costs. By attributing the payments solely to fixed costs, the fixed-total method overstates the amount of a hospital's *reimbursed* fixed costs and thus understates the amount of its *unreimbursed* fixed costs, shortchanging the hospitals.

CMS offers several responses: The statute does not prescribe any particular method for calculating the VDA. DRG

payments are lump-sum amounts covering both fixed and variable costs. And disentangling them into fixed-cost and variable-cost components would be difficult if not impossible. The courts deferring to CMS under *Chevron* have embraced these arguments. *See*, *e.g.*, *Lake Region III*, 2022 WL 9936856, at *8–9; *Unity HealthCare*, 918 F.3d at 577; *Stephens Cnty. Hosp.*, 2021 WL 4502068, at *8–9.

We are unpersuaded. Accountants and auditors routinely break down business costs into fixed and variable components. HHS itself must consider fixed and variable costs in setting the annual DRG payments. In some contexts, it must determine the portion of DRG payments attributable to particular kinds of costs. For example, to account for wage differences in different areas, the Medicare statute requires adjustments for the portion of DRG payments "attributable to wages and wage-related costs." 42 U.S.C. § 1395ww(d)(3)(E)(i). And in making those adjustments, CMS "determines the proportion of the [DRG payment] that is attributable to wages and labor-related costs." 42 C.F.R. § 412.64(h), (h)(2). For these reasons, HHS's arguments about the prohibitive difficulty of disentangling DRG payments fall flat.

HHS does not release the data that it uses to calculate the DRG payments, which would enable a more precise calculation of the fixed- and variable-cost components of the DRGs using industry averages. But the agency cannot use the unavailability of that data to justify a demonstrably false working assumption that DRG payments compensate only for fixed costs. When HHS does not release the best available data, hospitals, contractors, and the PRRB must resort to proxies. *See Pomona Valley Hosp. Med. Ctr. v. Becerra*, 82 F.4th 1252, 1261 (D.C. Cir. 2023). And here, there are reasonable proxies for disentangling DRG payments into their fixed and variable components. As noted above, the PRRB has long used a

hospital's own ratio of fixed costs to total costs for treating Medicare patients to determine the ratio of its DRG payments reflecting compensation for its fixed costs. *Lake Region I*, 2020 WL 13747016, at \*6 & n.45. And HHS itself, for payment years after 2017, mandates using the hospital's own ratio of fixed costs to total costs for treating all patients to determine the ratio of its DRG payments reflecting compensation for its fixed costs. 42 C.F.R. § 412.92(e)(3). We recognize that the regulation, which has only prospective application, is not directly controlling here. But it confirms our view that HHS *can* at least *attempt* to estimate how much compensation a hospital has already received for its *fixed* costs. The total-fixed approach does not even do that much.

Like the district court in *Stephens County Hospital*, we recognize that no method for calculating the VDA is perfect. 2021 WL 4502068, at \*9. Nonetheless, a method that ignores *all* compensation for variable costs is not one that reasonably approximates full compensation for fixed costs. Moreover, while DRG payments are keyed to *average* costs, the VDA, which requires the Secretary to "fully compensate the hospital for the fixed costs *it* incurs," 42 U.S.C. § 1395ww(d)(5)(D)(ii) (emphasis added), is keyed to the *actual* fixed costs of individual hospitals. So, in determining how much of a DRG payment compensates a hospital for *its* fixed costs, using the fixed-to-total cost ratio of the individual hospital may in fact be a *more* precise method—as opposed to a flawed "*proxy*," *Stephens Cnty. Hosp.*, 2021 WL 4502068, at \*10 (cleaned up)—than using the industry-wide, fixed-to-total cost ratios that HHS declines to release. Regardless, all we hold today is that the fixed-total method used by CMS did not "fully compensate" Lake Region for its "fixed costs" in 2013.

12

IV

We reverse the grant of summary judgment to HHS, reverse the denial of summary judgment to Lake Region, and remand with instructions to set aside CMS's decision and then remand to the agency for further proceedings consistent with the opinion.

*So ordered.*